# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SILVER STATE BROADCASTING, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BEASLEY FM ACQUISITION, *et al.*, <br><br> Defendants. | Case No. 2:11-CV-01789-APG-CWH <br><br> **ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT MOTION** <br><br> (Dkt. #183) |

Defendants/counterclaimants Beasley FM Acquisition Corporation, Beasley Broadcasting of Nevada, LLC, WAEC License Limited Partnership, and KJUL License LLC (the "Beasley counterclaimants") move for summary judgment on two of their counterclaims against plaintiff Silver State Broadcasting, LLC. The Beasley counterclaimants argue Silver State breached the parties' Assignment and Assumption Agreement by failing to assume a portion of a contract with Arbitron. Additionally, the Beasley counterclaimants argue Silver State breached the parties' sublease by not vacating the property and then failing to pay month-to-month rent.

I grant the motion as to liability on the breach of contract claim based on Silver State's refusal to assume the Arbitron agreement, but I deny the motion on damages for this claim. Additionally, I grant the motion for both liability and damages on the breach of the sublease.

**I. ANALYSIS**

The parties are familiar with the facts and I will not repeat them here except where necessary. Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Arbitron**

The Beasley counterclaimants entered into an Asset Purchase Agreement ("Purchase Agreement") with Silver State on May 27, 2009. (Dkt. #183-2.)  Under the Purchase Agreement, the Beasley counterclaimants sold to Silver State the assets of three radio stations: KBET, KCYE, and KFRH. (*Id.* at 6-7.)  Under Article 3 of the Purchase Agreement, Silver State agreed to assume certain contracts. (*Id.* at 9-10.)  Among the contracts Silver State agreed to assume was the portion of the Beasley counterclaimants' contract with Arbitron that related to KFRH. (*Id.* at 43.)  The Beasley counterclaimants had a "group contract" with Arbitron that covered several stations. (*Id.*)  Thus, the Beasley counterclaimants were not assigning the entire Arbitron contract to Silver State. (*Id.*)  Rather, the parties agreed that Silver State "will assume the obligations under the identified contract that relate to the station noted, subject to the consent of [Arbitron]." (*Id.*)  The Beasley counterclaimants provided Silver State with a copy of the master Arbitron agreement on May 18, 2009. (Dkt. #183-4; Dkt. #183-5.)

Consistent with these terms, counterclaimants Beasley FM Acquisition Corporation and Beasley Broadcasting of Nevada entered into a separate Assignment and Assumption Agreement ("Assumption Agreement") with Silver State. (Dkt. #183-6.)  Pursuant to that agreement, Silver State agreed to assume the contracts identified as the "Assumed Contracts" in the Purchase Agreement, which includes the Arbitron agreement as it related to KFRH. (*Id.*; Dkt. #183-2 at 9-

10, 43.) The Beasley counterclaimants sent Silver State a draft agreement to accept assignment of the Arbitron contract terms for KFRH. (Dkt. #183-5.) There is no evidence Silver State ever signed this agreement.

Arbitron subsequently denied the Beasley counterclaimants access to services for their other stations in Las Vegas because Silver State had not paid Arbitron for services relating to KFRH. (Dkt. #183-9 at 5-6; Dkt. #183-14.) In June 2011, non-party Beasley Broadcast Group, Inc. entered into a settlement agreement with Arbitron. (Dkt. #183-8.) According to the settlement agreement, a dispute arose between Beasley Broadcast Group, Inc. and Arbitron because Silver State refused to assume the contract or pay Arbitron. (*Id*. at 2-3.) In settlement of that dispute, Beasley Broadcast Group, Inc. and Arbitron agreed to execute a new master agreement which did not include the stations purchased by Silver State. (*Id.* at 2-3.) According to Caroline Beasley, to settle the dispute with Arbitron the Beasley counterclaimants purchased an additional $215,000 in Arbitron services that they would not otherwise have purchased. (Dkt. #183-9 at 5.) She also testified that non-party Beasley Mezzanine Holdings "probably" wrote the check to Arbitron on behalf of Beasley FM Acquisition.[1] (Dkt. #183-9 at 8.)

### 1. Liability for breach of contract

Under Nevada law, when the facts are not in dispute, contract interpretation is a question of law. *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 197 P.3d 1032, 1041 (Nev. 2008) (en banc). Generally, I construe unambiguous contracts according to their plain language. *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223-24 (Nev. 2005). A contract is ambiguous if it is subject to more than one reasonable interpretation. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). When interpreting a contract, "the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." *Sheehan*, 117 P.3d at 224 (quotation omitted). "The parties' intentions regarding a contractual provision present a question of fact." *Anvui, LLC*, 163 P.3d at 407.

---

[1] Beasley Mezzanine is the sole owner of Beasley FM Acquisition. (Dkt. #183-9 at 8.)

1    The Purchase Agreement and Assumption Agreement both unambiguously required Silver
2    State to assume the terms of the Arbitron agreement as it applied to KFRH.  The Arbitron
3    agreement was included in the schedule of assumed contracts and the document clarified that
4    while Silver State would not assume the entire master agreement, it would assume the terms of
5    the master agreement as applicable to KFRH.

6    Silver State's argument that it never agreed to assume the Arbitron agreement is belied by
7    the parties twice unambiguously agreeing to this arrangement in the Purchase Agreement and
8    Assumption Agreement.  Additionally, even if I considered Silver State's unauthenticated
9    evidence,[2] it is irrelevant whether Silver State had other contracts for similar services, did not
10   want Arbitron's services, or did not receive those services.  If Silver State did not want to assume
11   the Arbitron agreement, it should not have agreed to do so.  If Silver State did not receive services
12   from Arbitron (presumably because Silver State refused to assume the contract), its dispute on
13   that matter is with Arbitron, but that does not relieve Silver State of its contractual obligation to
14   the Beasley counterclaimants to assume the contract.

15   Silver State also contends that the schedule of assumed contracts in the Purchase
16   Agreement does not disclose the material terms of the Arbitron agreement.  However, the Beasley
17   counterclaimants have presented evidence that the master Arbitron agreement was sent to Silver
18   State before the parties executed the Purchase Agreement. (Dkt. #183-4.)  Thus, Silver State was
19   aware of the material terms of its portion of that agreement before it executed the Purchase
20   Agreement.

21   Finally, Silver State argues that a material change to the Arbitron agreement was not
22   disclosed to Silver State.  Even if I considered Silver State's unauthenticated evidence,[3] that

---

[2] In support of this argument, Silver State cites deposition testimony in exhibit 1.  Silver State did not attach the reporter's certification to exhibit 1. (Dkt. #211-1.)  I therefore decline to consider it because it is unauthenticated. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002).

[3] In support of this argument, Silver State cites deposition testimony in exhibit 4.  Silver State did not attach the reporter's certification to exhibit 4. (Dkt. #211-5.)  I therefore decline to consider it because it is unauthenticated. *See Orr*, 285 F.3d at 773-74.

evidence shows that Arbitron changed its pricing after Silver State and the Beasley counterclaimants had already executed the Purchase Agreement.

No genuine issue of material fact remains that Silver State contractually agreed to assume the Arbitron agreement as it applies to KFRH and that Silver State breached that obligation. I therefore grant the Beasley counterclaimants' motion for summary judgment as to Silver State's liability on the breach of contract counterclaim under the Purchase Agreement and Assumption Agreement for failing to assume the Arbitron agreement.

*2. Damages for Extra Amount Paid to Arbitron*

As to damages, however, the Beasley counterclaimants have not presented evidence meeting their initial burden under Federal Rule of Civil Procedure 56 of showing they are entitled to the amount paid to Arbitron under the settlement agreement for unwanted services. According to the evidence presented to me, Arbitron entered into a settlement agreement with Beasley Broadcast Group, Inc., which is not a party to this case. Additionally, Caroline Beasley testified that Beasley Mezzanine, which also is not a party to this case, "probably" paid Arbitron on behalf of named counterclaimant Beasley FM Acquisition. Thus, a genuine issue of material fact remains whether Beasley FM Acquisition paid the $215,000 to Arbitron. Additionally, there is no evidence that any of the other named counterclaimants incurred the expense.[4] I therefore deny the Beasley counterclaimants' summary judgment motion to the extent it seeks $215,000 in damages.

*3. Liquidated Damages*

The Beasley counterclaimants alternatively argue that they are entitled to $1 million under the liquidated damages provision in the Purchase Agreement, which the Assumption Agreement incorporates. Pursuant to Article 12 of the Purchase Agreement, "[i]f the transactions contemplated by this Agreement are not consummated as a result of [Silver State]'s default of this

---

[4] The parties dispute whether the $215,000 constitutes damages because the counterclaimants received a benefit from the Arbitron services provided in exchange for the payment, but neither side provides legal support for its position. (*See* Dkt. #183 at 14; Dkt. #217 at 8-9; Dkt. #217 at 8.)  Because none of the named counterclaimants has shown it is entitled to recover the $215,000, I need not address this issue.

Agreement," and the Beasley Counterclaimants are "not also in material breach hereunder," then the Beasley counterclaimants are entitled to $1 million in liquidated damages. (Dkt. #183-2 at 24.) Silver State responds that because the Beasley counterclaimants breached the Purchase Agreement by providing defective licenses and inoperable equipment, they are not entitled to liquidated damages.

Silver State has presented evidence from which a reasonable jury could find the Beasley counterclaimants breached the Purchase Agreement. Edward Stolz, Silver State's President, states in his affidavit that the Beasley counterclaimants misrepresented the viability and accuracy of one license, which resulted in a notice from the FCC. (Dkt. #211-6 at 6, 14-15.) He also states that he informed the Beasley counterclaimants about numerous equipment problems. (*Id.* at 6-7, 17-26.) Under the Purchase Agreement, the Beasley counterclaimants warranted that the "FCC Licenses are valid and in full force and effect." (Dkt. #183-2 at 11, 38.) The Beasley counterclaimants also warranted that the "Personal Property is in good operating condition and repair, subject to ordinary wear and tear." (Dkt. #183-2 at 11.) Consequently, issues of fact remain as to whether the Beasley counterclaimants materially breached the Purchase Agreement and thus would not be entitled to liquidated damages.

The Beasley counterclaimants argue they are nevertheless entitled to liquidated damages because Silver State breached the Assignment Agreement, there is no evidence the Beasley counterclaimants materially breached the Assignment Agreement, and the Assignment Agreement incorporates the Purchase Agreement's liquidated damages provision. However, the Assignment Agreement unambiguously states that it is "intended to evidence the consummation of the transaction contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement." (Dkt. #183-6 at 3.) Further, if there is any conflict between the terms of the two agreements, the Purchase Agreement controls. (*Id.*) Thus, there is no basis to conclude that even if the Beasley counterclaimants breached the Purchase Agreement, they nevertheless can collect liquidated damages under the Assignment Agreement.

Finally, the Beasley counterclaimants argue Silver State lacks standing to enforce the Purchase Agreement. I previously ruled that Silver State "lacks standing to enforce the rights and interests" under the Purchase Agreement. (Dkt. #230 at 4.) However, Silver State is not seeking to enforce the Purchase Agreement by denying it owes liquidated damages. Rather, it is presenting a defense to its liability for liquidated damages. I therefore deny the Beasley counterclaimants' summary judgment motion to the extent it seeks $1 million in liquidated damages.

**B. Sublease**

In August 2009, Silver State entered into a sublease with defendant Beasley Broadcasting of Nevada. (Dkt. #183-10.) Pursuant to the sublease, Silver State agreed to sublease from Beasley Broadcasting of Nevada a portion of the office space at 1515 East Tropicana Avenue consisting of the office and studio space for KBET and KFRH. (*Id.* at 2.) The sublease commenced in August 2009 and expired on March 26, 2010. (*Id.*) Silver State agreed to pay monthly rent in the amount of $1,321.89 until November 30, 2009, and then $1,341.72 thereafter. (*Id.*) Silver State also agreed to pay additional rent consisting of a pro rata share of sales, use, real, and personal property taxes, which the Beasley counterclaimants calculated as $1,243.32 per month. (*Id.* at 2-3; Dkt. #183-12 at 4.) The parties agreed that if Silver State made good faith efforts to construct a new studio but was delayed for reasons beyond Silver State's control, Beasley Broadcasting of Nevada would give good faith consideration to extending the sublease on a month-to-month basis. (Dkt. #183-10 at 2-3.) Otherwise, if Silver State remained on the premises following the expiration date, then Silver State would owe twice the base and additional rent. (*Id.* at 4.)

In mid-May 2010, an agent for the FCC monitored the station Silver State purchased under the Purchase Agreement. (Dkt. #211-6 at 14.) Based on what the agent observed, the FCC issued a notice of violation to Silver State because the coordinates in the license did not match the actual broadcasting location. (Dkt. #211-6 at 14-15.) Silver State applied for a modification of its license, which the FCC granted in August 2010. (Dkt. #217-5 at 2, 4.) According to Stolz, Silver

Stated did not vacate the office space covered by the sublease until September 2011 because of the licensing problems with the FCC. (Dkt. #211-6 at 6.)

There is no genuine issue of material fact that Silver State breached the sublease. Pursuant to that agreement, Silver State was to vacate the premises by March 26, 2010, but Silver State did not relocate until September 2011. There is no evidence Silver State paid rent for the holdover months. Additionally, there is no evidence that Silver State sought or obtained an extension.

Silver State's argument that it could not relocate because of the license error is misplaced. As an initial matter, there is no evidence anyone was aware of the error until May 2010 at the earliest. Thus, Silver State had already overstayed the sublease without payment before the licensing issue arose. Further, the FCC license issue was resolved in August 2010. (Dkt. #217-5 at 2.) Silver State does not explain why this issue required an additional year of occupying the premises without paying rent.

Under the sublease's unambiguous terms, Silver State owes Beasley Broadcasting of Nevada two times the base and additional rent for the entire holdover period of 18 months. Silver State does not dispute Beasley Broadcasting of Nevada's calculation of the amount owed. I therefore grant summary judgment in favor of Beasley Broadcasting of Nevada in the amount of $93,061.44 ($1,341.72 base rent + $1,243.32 additional rent doubled to $5,170.08 per month for 18 months). I will address pre- and post-judgment interest at entry of final judgment.

## II. CONCLUSION

IT IS THEREFORE ORDERED that the Beasley counterclaimants' motion for summary judgment on counterclaims against Silver State Broadcasting, LLC **(Dkt. #183) is GRANTED in part and DENIED in part.** No genuine issue of fact remains that Silver State is liable for breaching the Purchase Agreement and Assignment Agreement for failing to assume the Arbitron agreement, but issues of fact remain as to damages for this breach. Additionally, Beasley

////

Broadcasting of Nevada is entitled to summary judgment in its favor against Silver State in the amount of $93,075.84 for breach of the sublease.

DATED this 25th day of January, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE